No. 12,249.

MODEL LAND AND IRRIGATION COMPANY *v*. MADSEN.
(285 Pac. 1100)

Decided March 3, 1930.

Messrs. McHENDRIE & SHATTUCK, for plaintiff in error.

Mr. FRANK H. HALL, Mr. O. H. DASHER, for defendant in error.

*In Department.*

Mr. Justice Butler delivered the opinion of the court.

The Model Land and Irrigation Company sued out this writ of error to reverse a judgment dismissing its complaint.

The plaintiff is a mutual ditch company, and Ole Madsen owns stock in the company. At and prior to Madsen's purchase of his stock from another stockholder, a by-law of the company provided as follows: "Each holder of capital stock shall be entitled to receive from the company's canal water for domestic purposes and for the irrigation of lands lying under the line of said canal owned or controlled by the said stockholders in the following amount, towit, for each share of capital stock one twenty-thousandth of the total amount of water carried by or through the distributing canal or canals of the company. Provided further that no transfer of water from one tract of land to another tract of land shall be made or permitted, except by and upon orders and approval of the board of directors." After acquiring the stock, Madsen applied to the board of directors for leave to transfer the use of the water to a tract of land some distance from the land upon which the water had been used. The board refused to permit such transfer. Madsen thereupon attempted to make the transfer notwithstanding such refusal. The company brought this suit to restrain such use. The court found the issues in favor of Madsen, and dismissed the complaint.

1. "Valid by-laws are as much the law of the corporation as if their provisions had been a part of its charter. * * * By-laws which it was within the power of the corporation to adopt, and which were legally adopted * * *, are binding upon all the stockholders or members in so far as their rights as such are concerned, whether they expressly consented to them or not; * * * notice ordinarily being imputed to them." 1 Fletcher Cyc. Corporations, §501. In a case involving an incorporated association, our Court of Appeals said: "One

who becomes a member of an association becomes charge-able with the knowledge of the provisions of its charter and by-laws and is bound by them." *Columbia Building & L. Association v. Lyttle,* 16 Colo. App. 423, 426, 66 Pac. 247. And see 14 C. J., p. 345. In the present case there was something more than mere imputed knowledge. Several months before Madsen bought the water stock he leased it from the owner, and applied to the board of directors to put in a headgate so he could use the water on this land. The application was denied. When changes were permitted, the company installed the headgates.

█ The by-law in question is not against public policy or unreasonable. We have held that a contract between a ditch company and a landowner restricting the use of water to certain land is not unreasonable and against public policy. *Wright v. Platte Valley Irrigation Co.,* 27 Colo. 322, 61 Pac. 603. A similar construction should be given to the by-law, for "By-laws enter into the contract between the corporation and its stockholders or members." 1 Fletcher Cyc. Corporations, §501.

█ 2. In refusing to permit the transfer, the board of directors did not act arbitrarily, but, upon due consideration of all the facts, decided that the transfer would injuriously affect the corporation and the vested water rights of its other stockholders. The plan of the Model enterprise was to concentrate the use of the water carried by the Model system upon a certain tract of land known as the Model tract, lying many miles below the reservoir. Title to the land was acquired from the government under the Desert Entry Act, by each entryman and subscriber to stock in the Model Company, with the understanding that the water supplied by the Model irrigation system should be applied to the reclamation of this desert land. Madsen's land is seven or eight miles distant from the Model tract and six or seven miles distant from the land upon which the water was used prior to Madsen's purchase of the stock. To irrigate his land, Madsen attempted to take out water from the Model

canal many miles above the Model tract. If permitted to do so, the volume of water flowing down the canal to the Model tract miles below would be diminished, thus increasing the loss by evaporation. Witnessess testified that the loss by evaporation and seepage would be greater if the water should be distributed in small amounts throughout the length of the canal, instead of being carried in a concentrated volume for use upon land in the Model tract, and also that the change would increase the cost of operation. This testimony was not contradicted.

In refusing to permit the transfer, the board of directors exercised a discretion vested in it by the by-law quoted above. In the circumstances, the court was not justified in overriding the action of the board.

The judgment is reversed.

Mr. Chief Justice Whitford, Mr. Justice Moore and Mr. Justice Burke concur.