16

APPEAL OF THE TWO CROW RANCH, INC., FROM THE DECISION OF THE BOARD OF DIRECTORS OF THE CHAIN BUTTES COOPERATIVE STATE GRAZING DISTRICT.

No. 11545.
Submitted Oct. 27, 1971.
Decided March 7, 1972.
494 P.2d 915.

Leonard H. McKinney (argued), Lewistown, for appellant.
Raymond E. Dockery, Jr. (argued), Lewistown, for respondent.

HONORABLE THOMAS DIGNAN, District Judge, sitting in place of Mr. Justice John C. Harrison, delivered the Opinion of the Court.

This is an appeal by defendant Two Crow Ranch, Inc., from a judgment entered in the district court of Petroleum County. The plaintiff, Chain Buttes Cooperative State Grazing District, hereinafter referred to as the Grazing District, using their bylaws as authority, found the defendant in tres-

pass during the years 1964 and 1965 and assessed penalties against it totaling $3,651. The defendant requested and received a hearing before the plaintiff to protest the penalties incurred. The plaintiff affirmed its original decision and defendant appealed to the State Grass Commission, hereinafter referred to as the Commission; that appeal and a subsequent one to the district court were both resolved against defendant. The district court entered judgment affirming the decision of the State Grass Commission and from this judgment defendant appeals.

The issues presented by the defendant for review are based upon the theory that the decision of the Commission was erroneous because of the following:

(1) The Commission committed an error at law when it concluded that the Grazing District could legally and properly enforce Article X of its corporate bylaws;

(2) The Commission committed an error at law when it concluded defendant was responsible for trespasses which occurred when it was not the owner or in control of the premises when such trespasses occurred;

(3) The decision of the Commission was arbitrary and capricious when it admitted the following evidence, over objection: an offer of settlement, minutes not qualified for consideration, failure of proof of one alleged trespass, and the admittance of the prior knowledge of the controversy prior to hearing;

(4) The action taken by the Grazing District was in violation of Article III, § 27, of the Constitution of Montana and the Fourteenth Amendment to the Constitution of the United States.

Plaintiff's position in this appeal may be summarized as follows:

(1) The Commission made no error of law whatsover in concluding that the Grazing District could legally enforce Article X of its bylaws against defendant which was either the

owner or party in control of the cattle found in trespass within the purview of that bylaw;

(2) The Commission's decision to admit certain evidence in the hearing thereon was not arbitrary or capricious;

(3) The actions of the Grazing District and the Commission did not violate the due process rights of the defendant.

The underlying facts forming the basis of this case are as follows:

The Grazing District is incorporated under Title 46, Ch. 23, R.C.M.1947, otherwise known as the Grass Conservation Act. The defendant, hereinafter referred to as Two Crow, is a member of the Grazing District. Empowered by the authority contained within Article X of its bylaws, the Grazing District found Two Crow in trespass on three separate occasions and assessed penalties totaling $3,651 against Two Crow. The first of the three Two Crow trespasses occurred on June 29, 1964, and is not in issue on this appeal. The second and third trespasses occurred January 22-26, 1965 and February 15, 1965. Two Crow had originally obtained a valid 1964 grazing permit to graze its cattle on district land, but the grazing season ended on December 31, 1964.

On January 12, 1965, Waldo Parsons, the owner of Two Crow, received notice from the Bureau of Land Management that 422 Two Crow cattle were in trespass on district land and thereafter attempts were made to round the cattle up. These attempts were unsuccessful and the cattle were found to be in trespass in both January and February. Subsequently, Waldo Parsons received official notices of trespass, in which he was advised that a protest meeting would be held February 24, 1965, at which time representatives of Two Crow could appear and protest the action of the Grazing District. This meeting was held and Parsons did appear, represented by counsel, and did protest the Grazing District's action. The day after this meeting Parsons was sent a letter informing him that the Two Crow protest had been rejected and advising

him of the method and time limit for appeal to the Commission. In the hearing before the Commission certain evidence was admitted over the objection of Two Crow's counsel.

The record further reveals that in November of 1964 Parsons contracted to sell Two Crow to a Roger Stebbins by assignment of contract for deed. The terms of said contract provided for a down payment of $7,500, with the balance of $141,000 to be paid by January 1, 1965. Stebbins failed to make this payment by January 1, 1965, and Parsons sent Stebbins a notice of default February 8, 1965. The contract was cancelled in March, 1965 within the terms of a rescission document absolving Stebbins of all liability arising out of the execution of the contract.

The record further reveals that at no time prior to the January and February 1965 trespasses did the Grazing District receive any official notice that Parsons was attempting to sell Two Crow to Stebbins. Finally, on February 24, 1965, after the trespasses had in fact already occurred, did Parsons notify the Grazing District that he was attempting to sell Two Crow. The Grazing District did send Stebbins official notice on January 27, 1965, that nine cattle under his brand were in trespass.

On January 12, 1965, Parsons and Stebbins had furnished the Bureau of Land Management with copies of their contract. The record does not reveal that the Bureau of Land Management ever officially notified the Grazing District a transfer did take place.

The testimony further reveals Stebbins never made application to the Grazing District for membership nor did he apply for a grazing permit. Parsons held the 1964 grazing permit for Two Crow and applied for and received a 1965 grazing permit. These permits were never transferred to anyone else. The testimony revealed that the Grazing District considers the permittee responsible for trespassing cattle until shown otherwise.

The defendant contends that the Grazing District does not have the power to make and enforce Article X of its bylaws, towit:

"Article X. Use of Range, Section 3—Penalties: Members owning or in control of livestock found in trespass within the District may be assessed a penalty of not less than One Dollar ($1.00) per animal unit in trespass for the first offense, and not less than Five Dollars ($5.00) per animal unit for the second offense."

To properly resolve the precise scope of the Grazing District's enforceability power within the purview of Article X, it is imperative to understand both the origin and purposes of the Grass Conservation Act of the state of Montana. The Grass Conservation Act under which the Grazing District was incorporated was enacted to:

"* * * · provide for the conservation, protection, restoration, and proper utilization of grass, forage and range resources of the state of Montana * * * to permit the setting up of a form of grazing administration which will aid in unification or control of all grazing lands within the state * * *." Section 46-2301, R.C.M.1947.

To further this purpose the Act authorizes the incorporation of cooperative nonprofit grazing districts under the supervision of a state Grass Conservation Commission. Section 46-2301, R.C.M.1947. The Grazing District was duly incorporated and its articles approved on September 16, 1939. The general purpose of a grazing district is substantially similar to that of the Grass Conservation Act. To accomplish this purpose the grazing districts are empowered to lease or purchase grazing lands, to develop and manage district controlled lands and to allocate grazing preferences among members and nonmembers. Section 46-2312, R.C.M.1947. The Commission has authority to supervise and coordinate the formation and operation of the districts incorporated under the Act. The Commission has the power to dissolve districts under certain con-

22

ditions, to require officers of a district to furnish records to the Commission, and various other rights of supervision and control. Section 46-2307, R.C.M.1947. In all respects, the Grazing District is subject to the control of the Commission.

██ The Grazing District is defined by section 46-2302(2), R.C.M.1947, as follows:

"2. 'State district' means a nonprofit co-operative organization incorporated under the provisions of this act and its board of directors. 'State district' also includes all lands, owned or controlled by the state district or its members."

We find no merit whatsoever in defendant's proposition that grazing districts are not nonprofit corporations, but are subdivisions of the state, having as such only the authority expressly granted them by the laws under which they were created.

The Grazing District's authority or power to levy an assessment against Two Crow directly originates from Article X of the Grazing District's bylaws. Section 46-2315, R.C.M.1947, provides as follows:

"Each state district incorporated under this act shall within sixty (60) days after its incorporation adopt bylaws approved by the commission. Such bylaws may be amended or revised with the approval of the commission."

Pursuant to the requirement of the above statute, Article X of the Grazing District's bylaws was approved by the Commission on January 25, 1957. Indeed, it is clear from a reading of these sections that our legislature provided the means of organizing a nonprofit corporation; furthermore, as a nonprofit corporation the Grazing District had the authority to adopt bylaws, the power to manage and control the range, and the authority to perform and carry out any and all other acts in conformity with the provisions of the Grass Conservation Act.

██ We hold that the Grazing District had the proper authority to adopt and enforce Article X of its bylaws and

as a member of the incorporated Grazing District, Two Crow is bound by its bylaws. Two Crow was entitled to all the benefits of membership in the district, but at the same time Two Crow was subject to the obligations of membership, one of those obligations being to operate its livestock in accordance with the bylaws of the Grazing District. It is a well established precedent that the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation. When duly enacted, the bylaws are binding upon all members of the corporation or association who are presumed to know them and contract in reference to them. 18 Am.Jur.2d, Corporation § 168. This contractual relationship through corporate bylaws extends itself into the areas of correlative rights and duties of individual union members with their general charter bylaws and individual cooperative members with their respective association charters. On becoming a member of a corporation or association and subscribing to its bylaws, one thereby agrees to submit to its rules and regulations. King v. Farmers Electric Coop., 56 N.M. 552, 246 P.2d 1041; Model Land & Irrigation Co. v. Madsen, 87 Colo. 166, 285 P. 1100; Greene v. Board of Trade, 174 Ill. 585, 51 N.E. 599.

We find Article X, § 3, of the Grazing District bylaws, providing for an assessment against members owning or in control of livestock found in trespass on district land to be a valid implementation of the power granted to the Grazing District under section 46-2313(4), R.C.M.1947, "To manage and control the use of its range. * * *" In interpreting section 46-2312(4), this Court has said in Thompson v. Tobacco Root Co-op, 121 Mont. 445, 193 P.2d 811, that providing for trespassing livestock to protect against over-grazing is a proper and lawful function of a grazing district, and that without the right to provide for trespassing livestock the purpose of the Grass Conservation Act would fail.

24

██ We cannot countenance defendant's contention that Article X is criminal in nature, and that it is an attempt to enlarge the scope and powers granted by section 46-2326, R.C.M.1947. Under section 46-2326, R.C.M.1947, a grazing district has a choice of two courses of action in dealing with livestock permitted to run at large without a permit. It may bring a criminal misdemeanor action against the owner or person in control of the livestock, who if convicted will be subject to a fine; or alternatively, it may impound trespassing livestock and charge the owner or person in control for damages and the costs of caring for the animals. However section 46-2327, R.C.M.1947, provides:

"This act shall not be interpreted to repeal or abolish any other legal remedies, which a member, a permittee, or state district may now have against trespassing livestock, or the owner or persons in control thereof and the remedies provided by this act are additional and supplemental to the remedies provided by any other laws of the state of Montana."

Accordingly, the remedy provided within Article X of the bylaws of the Grazing District is properly authorized within the preceding section 46-2327, R.C.M.1947.

██ ██ Defendant's position seems to confuse what is essentially a civil action for trespass with a criminal action. The general rule is that a corporation has the power to enforce its bylaws by pecuniary penalties proportionate to the offense. 18 Am.Jur.2d, Corporations § 172. The Grazing District is not an administrative agency but a duly authorized corporation attempting to enforce one of its bylaws against one of its members. The offense for which it seeks redress is a particular kind of trespass, namely the overstaying of a grazing permit. This "offense" is not a violation of any state law and is not a criminal offense. The Grazing District's bylaws have been violated by a member who has availed himself of all the rights and privileges of such membership and is thus obligated to submit to the penalties assessed in accordance with

those bylaws. The assessment is not a lien against defendant's land or cattle, but nonpayment entitles the Grazing District to withhold issuance of defendant's license to operate livestock on the Grazing District's land.

We hold no error was made by the Montana Grass Conservation Commission in concluding that Two Crow was either the owner or person in control of the cattle found in trespass in January and February 1965. The record bears out the following facts decisive to our determination:

(a) Two Crow, not Stebbins, applied for and received from the Grazing District grazing permits for the pertinent years 1964 and 1965;

(b) At no time prior to finding Two Crow cattle in trespass in January and February 1965 did the Grazing District receive official notice that Two Crow had attempted to sell its property to Stebbins.

(c) Two Crow, not Stebbins, was in actual control of the cattle found in trespass in January and February 1965.

We further hold that the Commission, in admitting certain evidence over defendant's objection, was not arbitrary or capricious, and the evidence admitted did not result in prejudicial error. In Langen v. Badlands Co-op. Grazing Dist., 125 Mont. 302, 307, 308, 234 P.2d 467, 470, this Court discussed at length the scope of judicial review of the Commission's decisions:

"* * * this commission is given broad powers of fact finding and determination of all controversies arising between the different parties, agencies and instrumentalities concerned * * * their decisions shall be conclusive, except that an aggrieved party may appeal to the district court * * *.
"* * * *

"The appeal from the commission to the district court is for the purpose merely of determining whether upon the evidence and the law the action of the commission is based upon an error of law, or is wholly unsupported by the evidence,

or clearly arbitrary or capricioous. On such review courts will only inquire insofar as to ascertain if the board or commission has stayed within statutory bounds and has not acted arbitrarily, capriciously or unlawfully."

 Generally, evidence which has probative force and tends to prove or disprove a material fact is admissible in an administrative proceeding unless the receipt of such evidence results in a denial of due process. 73 C.J.S. Public Administrative Bodies and Procedure § 125. The Grazing District's offer to show that defendant attended a prior hearing to protest being found in trespass was properly admissible, since proof that such a hearing had been held was essential to giving the Commission the jurisdiction to hear the appeal. Section 46-2308, R.C.M.1947. Our examination of those other matters of evidence deemed inadmissible by defendant leads us to the conclusion that such evidence tended to prove material facts relevant to the resolution of this entire controversy and in no way do we feel the defendant was prejudiced by the admission of any of this material.

██ Finally, we find no merit in defendant's contention that the action of the Commission in upholding Article X of the Grazing District's bylaws violates Article III, § 27 of the Constitution of Montana and the Fourteenth Amendment to the Constitution of the United States. This Court in Sorensen v. Jacobson, 125 Mont. 148, 155, 232 P.2d 332, 336, set forth the requirements of due process:

"* * * Due process of law extends to every case which may deprive a citizen of property. It requires an orderly proceeding adapted to the nature of the case and in accordance with law, in which the person has an opportunity before the taking to be heard, and to defend, protect and enforce his rights.
* * *"

In accord, Mitchell v. Banking Corp. of Montana, 94 Mont. 183, 22 P.2d 155; Great Nor. Ry. v. Roosevelt County, 134

Mont. 355, 332 P.2d 501; and Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

The record reveals the defendant at all times received timely notice of its second and third trespasses from the Grazing District's board of directors. The defendant was represented by counsel throughout the hearings before the Grazing District's board of directors and before the Commission and a complete record was made of all testimony and exhibits offered. We refer also to the *Thompson* decision, in which this Court upheld in all respects the constitutionality of Title 46, Chapter 23, R.C.M.1947.

For the foregoing reasons, the decision of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, DALY and CASTLES, concur.